NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AIDA VISAKAY, as Executor for the ESTATE OF WILLIAM VISAKAY,<br><br>    Plaintiff,<br><br>v.<br><br>SEARS ROEBUCK AND COMPANY, *et al.*,<br><br>    Defendants. | Civil Action No.: 2:17-cv-11570<br><br>**OPINION** |

**CECCHI, District Judge.**

I. **INTRODUCTION**

This matter comes before the Court on defendant Husqvarna Consumer Outdoor Products N.A., Inc.'s ("HCOP" or "Defendant") motion to exclude the testimony of plaintiff Aida Visakay's ("Plaintiff") expert witness, Christopher Ryan. ECF No. 98-1 ("Mot."). Plaintiff opposed Defendant's motion (ECF No. 103, "Opp."), and HCOP replied in support of its motion (ECF No. 106, "Reply"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendant's motion is **DENIED**.

II. **BACKGROUND**

    **A. Factual History**

On August 19, 2016, William Visakay ("Visakay") was riding his 2007 Craftsman Lawn Tractor in his backyard when it overturned and rolled, causing fuel to spill out and the lawnmower to catch on fire. Mot. at 1; Opp. at 2, 4–5. After the accident, Visakay died from burn injuries. Mot. at 1; Opp. at 2. The dispute between the parties appears to center around how the fuel was expelled from the lawnmower, and how the fuel was ignited. Plaintiff and her expert, Christopher Ryan, argue that there was a design defect in the lawnmower, which caused the fuel tank to become

damaged when the lawnmower rolled over. Opp. at 4–5. Defendant and their experts claim that Visakay failed to properly secure the lawnmower's gas cap, which caused the fuel to pour out of it and become ignited by a spark from an undetermined source. Mot. at 1; Reply at 3–4.

### B. Ryan's Expert Report

Ryan, Plaintiff's expert, received his Bachelor of Science Degree in Mechanical Engineering, with an emphasis on product design, from Iowa State University. ECF No. 103-2 at 4, 7. He has over 25 years of experience working with manufacturing companies, including managing prototype testing and ensuring products, including lawnmowers, meet industry safety standards. *Id.* at 7. He also worked at John Deere for 19 years, where he oversaw the testing of new mowers and small tractors. *Id.* In his expert report, Ryan identified damage to the crossmember of Visakay's mower, which is a U-shape part that supports the fuel tank. *Id.* at 20. Ryan opined that the crossmember of Visakay's mower was severely deformed, which led to the fuel tank being crushed and the fuel ejecting from the tank. *Id.* Ryan concludes that the gas and vapors escaped from the lawnmower and ignited against the hot running engine. *Id.*

### C. Procedural Background

On August 3, 2017, Plaintiff filed a civil action against Sears, Roebuck and Co.; Sears Rockaway Townsquare; KCD IP, LLC, d/b/a/ Craftsman; Briggs & Stratton Corporation; HCOP; and Stanley Black & Decker, Inc. in the Superior Court of New Jersey, Morris County. ECF No. 1-1. On November 13, 2017, Defendants filed a notice of removal, removing the case to this Court pursuant to 28 U.S.C. § 1441. ECF No. 1. HCOP is the only remaining defendant. *See* ECF Nos. 22, 64, 68.

### III. <u>LEGAL STANDARD</u>

As to the admissibility of expert testimony, "[u]nder the Federal Rules of Evidence, a trial judge acts as a 'gatekeeper' to ensure that 'any and all expert testimony or evidence is not only relevant, but also reliable.'" *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)); *see also* Fed. R. Evid. 702. The admission of expert testimony turns on three criteria: "(1) the proffered witness must be an expert, *i.e.*, must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge, *i.e.*, reliability; and (3) the expert's testimony must assist the trier of fact, *i.e.*, fit." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (internal quotation marks and brackets omitted).

In addition to these three criteria, the Third Circuit has recognized that, in performing its critical gatekeeping function under *Daubert* with respect to expert testimony, a trial court must bear in mind "the preference for admissibility of the Federal Rules of Evidence" and avoid excluding expert evidence solely because the court does not think it is ultimately the most persuasive evidence. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 750 (3d Cir. 1994). Finally, the party offering the expert testimony has the burden of proof by a preponderance of the evidence. *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Litig.*, 509 F. Supp. 3d 116, 147–48 (D.N.J. 2020); *In re Hum. Tissue Prods. Liab. Litig.*, 582 F. Supp. 2d 644, 655 (D.N.J. 2008).

### IV. <u>DISCUSSION</u>

HCOP challenges each of the three criteria required for Ryan's testimony to be admissible. First, HCOP contends that Ryan is not qualified to opine on the cause and origin of the fire. Second, HCOP argues that Ryan's methodology is not sufficiently reliable to be admissible. Third,

HCOP claims that Ryan's opinions do not fit the facts of this case. Addressing each argument in turn, the Court finds that Ryan's opinions are admissible.

### A. Qualifications

HCOP asserts that Ryan is not qualified to opine on the cause and origin of the fire because of his lack of experience with fire investigation. Opp. at 14–16.

To be qualified, the witness must possess specialized expertise. The Third Circuit reads the qualification requirement broadly and interprets it liberally—a "broad range of knowledge, skills, and training qualify" as specialized expertise. *Pineda*, 520 F.3d at 244; *see also Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782–83 (3d Cir. 1996) ("[I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate.").

HCOP's argument that Ryan is not qualified is unavailing. Ryan possesses the "specialized expertise" necessary to opine on the issues in this case. He holds a Bachelor of Science Degree in Mechanical Engineering with an emphasis on product design. ECF No. 103-2 at 7. He has over 20 years of experience designing products and rejecting/approving designs, including specifically with lawnmowers. *Id.* He was employed for 19 years with John Deere, where he managed the labs responsible for testing all new John Deere mowers and small tractors. *Id.* Notably, Ryan worked with other manufacturers to help develop an industry testing standard to validate new plastic fuel tank designs. *Id.* Thus, Ryan possesses a variety of experiences within the relevant field. Coupled with the understanding that the qualifications requirement is construed "liberally," *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000), Ryan is qualified to opine about the alleged design defects of the lawnmower and the risks and possible outcomes of such design

defects, including the flammability and explosive nature of the products. *See Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 114 (3d Cir. 1987) (stating that "at a minimum, a [proffered] expert witness on causation must possess skill or knowledge greater than the average layman in determining causation" and finding that a salesman was not qualified to opine as to the cause of a fire because, *inter alia*, he was not an engineer and lacked machinery design experience—in contrast to Ryan's qualifications herein).

Defendant's other challenges rebuffing Ryan's qualifications, such as its argument that other witnesses with experience in fire investigation were unable to form a reliable conclusion about the cause of the fire (Reply at 2), are unpersuasive. The Court is satisfied that under the liberal qualification standard, and with Ryan's extensive background and experience with lawnmowers, Ryan is qualified to provide expert testimony in this case as to the alleged defect of the lawnmower and, relatedly, the cause of the fire. *Holbrook*, 80 F.3d at 782 (an expert need not be the "best qualified" or have the "specialization . . . most appropriate" to provide expert testimony). While Defendant's challenges to Ryan's qualifications do not render his opinion inadmissible, HCOP will have an opportunity to explore any vulnerabilities in his background during cross-examination. *See United States v. Mitchell*, 365 F.3d 215, 242 (3d Cir. 2004).[1]

### B. Reliability

HCOP contends that Ryan's methodology is not sufficiently reliable. Specifically, HCOP argues that (i) Ryan lacks sufficient facts and data to form his opinions (Mot. at 16–17); (ii) Ryan evaluated his product defect theory using scientifically unreliable testing (Mot. at 17–20); and (iii) Ryan's theory that the fire was caused by a product defect relied on no methodology (Mot. at 20–21).

---

[1] Additionally, to the extent Defendant seeks specific limitations as to Ryan's planned trial testimony, the Court will consider such arguments at the appropriate time.

"[A]n expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *Paoli*, 35 F.3d at 742. To be reliable, it must be based "on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Id.* (quoting *Daubert*, 509 U.S. at 590).[2] Rule 702 also requires that expert testimony is "based on sufficient facts or data." Fed. R. Evid. 702; *Grande Vill. LLC v. CIBC Inc.*, No. 114CV3495, 2018 WL 3085207, at *4 (D.N.J. June 22, 2018). "'Sufficient' implies that expert testimony can be based on less than the entire universe of facts or data that could be provided to the expert." *Grande Vill. LLC*, 2018 WL 3085207, at *4. "The test of admissibility is not whether a particular scientific opinion has the best foundation, or even whether the opinion is supported by the best methodology or unassailable research." *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999), *amended,* 199 F.3d 158 (3d Cir. 2000). Rather, the "inquiry as to whether a particular scientific technique or method is reliable is a flexible one," aimed at filtering out opinions that cannot satisfy the scientific method. *Paoli*, 35 F.3d at 742.

Ryan's methodology is sufficiently reliable such that his opinions may be presented to the jury for its consideration. First, as described in his expert report, Ryan relied on sufficient facts and data to form his opinions: he reviewed photos from the scene, police reports, medical reports, sources with information about the mower at issue (such as the Craftsman Model Operator's Manual) and other documents from the case. ECF No. 103-2 at 8–10. He also inspected the burned

---

[2] In determining whether proposed expert testimony is reliable, the trial court is guided by the following factors: "(1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put." *Paoli*, 35 F.3d at 742 n.8.

mower and summarized his findings, performed tests with exemplar mowers, and conducted a three-dimensional virtual analysis. *Id.* at 18–45. Ryan is not required to rely on "the entire universe of facts or data" that could have been provided to him, and challenges regarding materials he may not have reviewed are suitable for cross-examination. *Grande Vill. LLC*, 2018 WL 3085207, at *4 (finding that the expert reviewed "sufficient facts and data" and to the extent the opposing party disagrees, "it may probe what materials were not reviewed on cross-examination").

Second, Ryan's opinions are supported by "good grounds." *Paoli*, 35 F.3d at 742. After inspecting the burned mower, Ryan hypothesized that the fuel tank "would have been crushed" and that "pressurized fuel would pour out uncontrollably" due to the observed damage to the crossmember. ECF No. 103-2 at 20–22. Then, to prove his theory, he purchased and examined exemplar mowers and performed tests including a static side roll over test, a mild dynamic side roll over test, and a rearward/right side roll over test. *Id.* at 22–30. These tests are summarized in Ryan's expert report, and yielded results that were allegedly consistent with his inspection of the burned mower. *Id.* Ryan also conducted an "engineering analysis," which included investigation of a three-dimensional model. *Id.* at 32–36. The Court finds that Ryan's employed methodology is "sufficiently reliable so that it will aid the jury in reaching accurate results." *Paoli*, 35 F.3d at 744 (internal quotation marks omitted). Any purported weaknesses of Ryan's analysis highlighted by HCOP can be addressed at cross-examination, which is the proper forum for such questioning. *See Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414–15 (3d Cir. 2002).

HCOP also contends that Ryan's testing did not yield the damage that he expected. Mot. at 19. Ryan's conclusion from his engineering analysis, however, states the opposite: "The crossmember can crush the fuel tank during impact with the ground." ECF No. 103-2 at 40. This

7

is consistent with the hypothesis he formed after his examination of the burned mower. HCOP's arguments concern the *validity* of Ryan's conclusions—which is a determination for the jury to make after the benefit of cross-examination. *See Mitchell*, 365 F.3d at 244–45 ("Rule 702 and *Daubert* put their faith in an adversary system designed to expose flawed expertise.").

Third, Ryan's fire causation opinions result primarily from the same methodology detailed above. That is, his sufficiently reliable methodology of determining the defect in turn led to his conclusions about the fire. Notably, the Operator's Manual explicitly states: "Gasoline is extremely flammable and the vapors are explosive," ECF No. 103-2 at 42, which reinforces Ryan's conclusions that fuel contacting the hot engine could result in a fire. Defendant's argument that Ryan did not follow the National Fire Protection Association ("NFPA") fire investigation standard (Mot. at 20–21) is unpersuasive; NFPA standards are "merely a guide to assist fire investigators and its provisions are nonmandatory." *See Matter of Soued*, No. CV2006674, 2023 WL 5623235, at *10 (D.N.J. Aug. 31, 2023) (internal quotation marks omitted) (collecting cases). Further, exclusion of Ryan's testimony is not warranted because he allegedly did not "consider other items as potential ignition sources." *Id.* ("That [the expert] did not consider other items as potential ignition sources . . . goes to the weight the fact finder places on his testimony."). Accordingly, Defendant's challenges to the reliability of Ryan's methodology are rejected.

### C. Fit

Lastly, HCOP challenges the fit between Ryan's proffered testimony and the facts of this case. Mot. at 21–22. Specifically, it asserts that Ryan's opinions are not applicable to the facts of this case and do not analyze "what damage a fuel tank could experience in an overturn." *Id.*

With respect to fit, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact by establishing a valid scientific connection to the pertinent inquiry.

*See Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 595 (D.N.J. 2002); *Paoli*, 35 F.3d at 742–43. That is, the testimony must fit the particular case, demonstrated by a valid connection between the testimony and the specific issues presented in the case. *Paoli*, 35 F.3d at 742–43.

Plaintiff has demonstrated multiple ways in which Ryan's opinions will assist the jury. Ryan's opinions speak to the purported design defects of the Craftsman model, which Plaintiff directly relies on for her claims. Ryan opines on the risks related to certain design choices of the lawnmower, and whether there were reasonable alternative designs that could have reduced those risks. Therefore, Ryan's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," thus allowing for that testimony's admissibility. Fed. R. Evid. 702.[3]

### V.  MOTION FOR SUMMARY JUDGMENT

HCOP filed a motion for summary judgment concurrently with its motion to exclude Ryan's testimony. ECF No. 97. Plaintiff opposed the motion (ECF No. 104), and HCOP replied (ECF No. 105).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

---

[3] Since Ryan's testimony will be admitted, it is unnecessary for the Court to address the parties' arguments about whether the jury could evaluate the cause of the fire without expert testimony.

HCOP argues that this case requires expert testimony to determine whether the lawnmower at issue had a design defect, as well as whether such defect caused the fire. ECF No. 97-1 at 3–4. HCOP contends that Ryan is the only witness who could support Plaintiff's theory of how the fire began, and if his opinions were excluded, Plaintiff has no evidence to support an essential element of her claim. *Id.* at 4–5. HCOP acknowledges, however, that its motion for summary judgment rises and falls with its motion to exclude Ryan's testimony. *Id.* at 3 ("[I]f the Court grants HCOP's motion to exclude his testimony, it should enter summary judgment for HCOP as well."). Since the Court has denied HCOP's motion to exclude Ryan's testimony for the reasons described above, it need not delve further into HCOP's summary judgment arguments regarding whether an expert is necessary. Given that Ryan and Defendant's experts will present competing theories of the accident in this case, there exist genuine issues of material fact that preclude summary judgment. Accordingly, HCOP's motion for summary judgment is **DENIED.**

## VI.     CONCLUSION

For the reasons set forth above, HCOP's motion to exclude (ECF No. 98) and motion for summary judgment (ECF No. 97) are denied. An appropriate Order accompanies this Opinion.

**DATED**:  April 29, 2024

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**

10